## SINCLAIR OIL & GAS CO. et al. v. ARMOUR.

No. 23612.    May 28, 1935.

Edward H. Chandler, Summers Hardy, T. H. Hammett, and Robert L. Imler, for plaintiffs in error.

Simons, McKnight, Simons, Mitchell & McKnight, for defendant in error.

RILEY, J. This is an appeal from a judgment for defendant in error, hereinafter referred to as plaintiff, in an action to recover damages growing out of an automobile collision at a county highway intersection.

Plaintiff was driving his automobile going east as he approached the intersection. An automobile belonging to defendant Sinclair Oil & Gas Company was being driven by defendant V. L. Glick, an employee, north on the highway running north and south, and in approaching the intersection where the collision occurred was approaching same from plaintiff's right. The intersection was in the country in the Garber oil field southeast of Garber, and both highways carried more traffic than the ordinary country highway.

Both of said highways were well graded. The graded or traveled portions of each road were about 40 feet wide. The view of the highway coming from the south as one approached from the west, and that of the highway coming from the west as one approached from the south, was obstructed by an embankment some eight feet high at the southwest corner of the intersection.

Plaintiff alleged, and there is evidence reasonably tending to support the allegation, that he approached the intersection from the west at a rate of speed not exceeding 25 miles per hour, gradually decreasing the speed to about 15 miles per hour at the west line of the intersection; that after having looked both to the right and the left to ascertain whether or not any vehicle was approaching from either direction, and seeing none, he entered the intersection. That his view to the south was so obstructed by the high embankment and by a truck which was standing parked on the west side of the highway about 80 feet south of the intersection that he could not and did not see defendant's automobile approaching from the south at the moment he entered the intersection. That seeing no vehicle approaching, he continued on and into the intersection at a rate of speed of about 15 miles per hour; that as he reached approximately the center of the intersection he observed the defendant's automobile some 100 to 150 feet south of the crossroads coming from the south at a high and dangerous rate of speed, alleged in the petition to be in excess of 60 miles per hour; that he immediately shut off the power of his automobile and applied the brakes in bringing his car to a virtual standstill about ten feet east of the center of the intersection; that the defendant Glick continued to drive his car at such rapid rate of speed, and, without taking any precaution whatever to avoid a collision, drove his car against that of plaintiff, thus causing plaintiff's injuries.

Defendant alleged that plaintiff was driving his car at a rate of speed of 40 miles per hour, and drove into said intersection without having his car under control, and failed to exercise due care and caution; failed to reduce the rate of speed of his car to a reasonable rate under the circumstances and entered said intersection and failed to look and ascertain whether other persons were approaching said intersection, and, having failed to exercise due care and caution, was guilty of contributory negligence.

The evidence is in hopeless conflict on the material questions as to the acts and conduct of the respective drivers and the manner in which they drove and handled their cars in approaching and driving into said intersection.

The evidence shows that plaintiff lived about one-half mile west and defendant Glick lived about one-fourth mile south of said intersection; that the duties of both required them to drive over said roads frequently and that both were thoroughly familiar with

and knew the dangerous nature of the intersection.

The evidence shows that plaintiff was seriously injured.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $7,500, and defendants appeal.

The principal questions presented are upon the instructions given and those requested by defendants and refused.

It is first urged that the court erred in overruling defendants' demurrer to plaintiff's evidence, and in refusing to direct a verdict for defendants.

There is no merit in this contention. As stated before, the evidence is in hopeless conflict.

The testimony of plaintiff and his principal witnesses, some of whom were eyewitnesses, tends strongly to show that plaintiff was without fault in the premises, and that the collision would not, and could not have occurred, but for the negligence of defendant Glick. On the other hand, the testimony of defendant Glick and other witnesses who were also eyewitnesses, was to the effect that Glick was without fault in the premises, and that the collision would not and could not have happened except for the negligence and want of care on the part of plaintiff.

It appears reasonably certain that the collision would not have occurred if both drivers had handled their cars and conducted themselves as their testimony would indicate. It would not have happened if each driver had observed and performed the duties incumbent upon him as defined in the instructions given by the court.

It was for the jury to determine what the facts were from all the evidence. It may be that both drivers were guilty of negligence. But the question of whether or not plaintiff was guilty of contributory negligence was one for the jury, under the Constitution; certainly a directed verdict would not have been proper.

It is next contended that the court erred in giving instruction No. 14, which is as follows:

"You are further instructed that in considering the question as to which of the cars, namely, the one driven by the plaintiff, Armour, or the one driven by the defendant Glick had the right of way in entering the intersection where the collision occurred, that it is provided by the statutes of this state that at intersecting roads or streets vehicles approaching from the right shall have the right of way over those approaching from the left, but that in applying the rule laid down in such statute to the rights of the parties in this action if you find and believe from the evidence in this case that the car driven by the plaintiff, Armour, entered the intersection in question before the car driven by the defendant Glick entered such intersection, then the car driven by the plaintiff, having first entered such intersection, had the right of way over the car driven by the defendant Glick, regardless of the direction either car was traveling.

"In this connection you are further instructed that such right of precedence does not release the traveler or vehicle thus favored from the duty of exercising due care not to injure another at said intersection, and that it was the duty of both the plaintiff and defendant to exercise every reasonable precaution, commensurate with the apparent danger incident to crossing intersections of roads burdened with traffic, and to avoid injuries to other persons traveling upon said highways regardless of which car had the right of way."

It is argued that this instruction is contrary to that part of Rule 7, section 10164, C. O. S. 1921, which reads:

"At intersecting roads or streets, vehicles approaching from the right shall have right of way over those approaching from the left."

This court has many times held that the above rule does not go to the extent of giving the automobile which comes to an intersection from the right the absolute right to enter and proceed across such intersection without regard to the presence of another automobile which has already come into the intersection from the left or unfavored direction.

In Lee v. Pesterfield, 77 Okla. 317, 188 P. 674, Mr. Justice Bailey, in discussing the above rule, said:

"The provisions of this rule, like any provision of statutory regulations, must be given a reasonable construction, and to assert that the observed approach of an automobile from the right is to preclude the advance of vehicles approaching from the left until the passage of such vehicle approaching from the right is to place a prohibition upon all traffic approaching from the left in streets of towns and cities where the streets must care for heavy traffic."

A number of times this court has held that without regard to the directions the automobiles are traveling the one entering the intersection first has the right to proceed on and through the intersection. Enterline v. Smith, 105 Okla. 200, 231 P. 1064; Newell

v. Musgrove, 129 Okla. 207, 264 P. 156; Yellow Taxicab & Baggage Co. v. Pettyjohn, 157 Okla. 232. 11 P. (2d) 487.

The authorities are not in harmony on this question. Cases are cited from other states which severely criticise the rule and say that it is calculated to encourage drivers to a·race for entrance to the intersection. But such is not the case where· the duty of drivers in approaching an intersection is observed. In this case the court clearly defines the duty of both plaintiff and defendant in the matter of approach to the intersection.

Rule 7, above referred to, might properly be said to define the right of the respective drivers to enter the intersection. If a person driving an automobile, who is about to come to an intersection drives his automobile in a prudent manner, such as a reasonably prudent person would do under similar circumstances; drives his automobile not in excess of such rate of speed as is reasonable under the circumstances, having due regard to the traffic and use of the highway and the safety of pedestrians and drivers or operators of other vehicles, with his own car under control so as to be in a position ·to accord any other vehicle approaching from a direction favored under the law the right to enter and cross the intersection ahead of him, and in approaching such intersection makes vigilant use of his senses to ascertain whether another car is approaching such intersection under circumstances likely to produce a collision, and in so doing observes no automobile or other vehicle approaching such intersection certainly he ought to be permitted to enter same and proceed on and across the intersection. Any other rule would effectively block traffic at all busy intersections. .

The jury was instructed what it was the duty of plaintiff in this case to do. If every driver would so conduct himself, there would be few collisions. Whether or not plaintiff so operated his automobile was a question for the jury. If he did so, under such circumstances, his right to proceed, after having entered the intersection ahead of other cars approaching in like manner and with like care, is recognized in this state. This, and no more, the instruction complained of told the jury.

By instructions 10, 11, 12, and 15, the court clearly defined the duty of plaintiff in approaching the intersection, in clear language. and told the jury that if plaintiff failed therein, and his failure proximately contributed to his injuries, the verdict should be for defendants.

It is next contended that the court erred in giving instruction No. 16, to the effect that it was the duty of both parties to exercise ordinary care in approaching the intersection, and that if defendant Glick, by the use of ordinary care and caution in approaching the intersection, could have avoided the collision, and failed to do so, and if the jury should find that the collision was the direct and proximate result of his lack of ordinary care and caution in approaching and entering the intersection, and should find that plaintiff was not guilty of contributory negligence as elsewhere defined in the instructions, the verdict should be for the plaintiff.

We are aware of no law that relieves a driver of an automobile from the duty to exercise ordinary care and caution in approaching and entering an intersection. The mere fact that rule 7. of the rules of the road, gives one approaching an intersection from the right the right of way over one approaching from the left does not authorize the driver approaching from the right to abandon all care and caution.

Particularly is this true where, as in this case he is familiar with the conditions surrounding the intersection and knows that the view of one approaching the intersection to his left is obstructed by a high embankment. Certainly, under such circumstances, he should be required to exercise ordinary care.

A greater degree of vigilance may be called for as to automobiles approaching from the right than as to those approaching from the left, but the duty still remains to use ordinary care and caution as to cars approaching from the left.

The instruction given by the court, as a whole, placed no less burden upon the plaintiff and no greater burden upon the defendants than was justified under the law and the evidence.

Finally, it is contended that the court erred in the instruction on the measure of damages, in that the jury was instructed that in the event the jury found for the plaintiff, then in determining the amount of recovery the jury might take into consideration the previous physical condition and health· of the plaintiff and nature and character of his injuries, their duration and extent; the effect, if any, upon his physical condition, both present and that which is

reasonab'y certain to result in the future, the pain and suffering which he has endured and which it is reasonably certain he will endure, in the future, if any.

That part of the instruction relative to pain and suffering, and particularly that "which it is reasonably certain he will endure in the future, if any," is complained of, in that it is contended that "there is no evidence that it was reasonably certain that plaintiff would endure any pain and suffering in the future." It is also said that there is no evidence as to the effect plaintiff's injuries would have upon his physical condition in the future.

The latter contention is entirely without merit.

Plaintiff was injured on the 26th day of January, 1931. He was taken to the hospital at Enid and was there treated by Dr. F. H. Hudson. Dr. Hudson described his injuries as a compressed fracture of the 7th, 8th, and 9th dorsal vertebrae, and some "lipping of the 6th"; two ribs were fractured, one of them in two places. He was put to bed and kept there for some fifteen weeks. When he left the hospital he was required to wear a brace, and at the time of the trial, October 20, 1931, was still wearing it. It was necessary that he wear the brace in order to keep his body from bending forward and to hold the back rigid. There was an abundance of evidence tending to show that plaintiff's physical condition would be affected in the future to some extent by the injuries.

The doctor did testify that. he could not determine whether or not there would be a complete recovery. As to that, he said:

"A. No, sir, I can't tell at this time; some of them get all right and some of them have trouble. Q. Is there any way that can be ascertained except by the passage of time in the particular case? A. That is all; we can speculate a little on it, but we can't tell. Q. But to definitely know, you can't tell at this time? A. No, sir."

And on cross-examination:

"A. Well, Mr. McKeever, the recovery, so far as the bone is concerned, is bound to take place or not to take place as in any other bone, and the after results of the thing is only a question of pain and some have it and some do not have it. Q. He got along pretty good, didn't he? A. So far. Q. He made a normal recovery, didn't he? A. I am not able to state the ultimate recovery at the present time but at the present time, up to the present time, he has done very well."

The doctor made no estimate as to how long plaintiff would probably be required to wear the brace, but it is quite clear from his evidence that it would be necessary for some considerable time in the future.

On the question of future pain, the evidence is not so clear. There is an abundance of evidence of pain suffered after the injuries and while plaintiff was in the hospital.

Plaintiff testified, in substance, that at the time of the trial he suffered some pain at the place where the rib was fractured near the spine, not all the time, but at irregular intervals. His testimony as to pain at the time of the trial was:

"A. My understanding this rib was broken where I have the most pain close to the backbone. Q. On which side? A. On my right side. Q. How about the other side? A. It was just cracked, it wasn't as bad as the right side. Q. Do you have any pains since that in your back? A. Yes, sir. great pain."

Dr. Hudson testified:

"A. In order to speculate on that. I will have to explain a little. I will say that the recovery of compression fractures. so far as everything goes except pain is usually good; now the pain is simply due to the sensory nerve that comes out from the spinal column. and if you don't get a good fixation of the spine in these kind of cases, then the people have pains in the distribution of the nerves and they have pain. and I can't tell you whether he will or not yet."

There was no expert evidence as to future pain. But from the very nature of the injuries, and the condition of plaintiff at the time of the trial, the jury could infer that he would, to a reasonable certainty, suffer some pain thereafter, before final recovery, if that should ever be brought about.

In support of defendants' contention, Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okla. 566, 151 P. 230, and Jones v. Sechtem. 131 Okla. 155, 268 P. 201, are cited. The latter case involved injuries of such a nature that the permanency thereof could only be shown, if at all, by expert medical testimony, and there was no evidence of that character tending to prove the injuries to be permanent. The injuries were not such as by their very nature the jury could infer that they would be permanent. It was on that account that it was held error to submit the question of permanent injury to the jury.

The Griggs Case, supra, is one where it was said that the injuries were plainly subjective. It was there said that although

plaintiff herself did testify that she still suffered pain at the time of the trial, she could not testify with any degree of certainty that she would suffer future pain, and the expert witnesses did not so testify.

By the X-ray and other modern means of diagnosis, many injuries that formerly would have been subjective only are now made objective.

Two rules by which the question of future pain and suffering may be submitted to the jury have long been recognized.

"If the injury is objective, and it is plainly apparent from the very nature of the injury that the injured person must of necessity undergo pain and suffering in the future, then most certainly the plaintiff would not be required to prove a fact so plainly evident, and upon making proof of such objective injury the jury may infer pain and suffering in the future." Shawnee-Tecumseh Traction Co. v. Griggs, supra.

Defendants contend that the verdict is excessive. In view of the serious nature of the injury, though not shown to be permanent and not contended to be, the contention cannot be sustained.

There being no substantial error, the judgment is affirmed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.