Thomas A. GOODRIDGE, a minor, by and through his father and next friend, J. Lee Goodridge, Plaintiff,

v.

Floyd Luther DAVIS, Defendant.

No. 38207.

Supreme Court of Oklahoma.

Oct. 27, 1959.

Floyd L. Walker, Tulsa, for plaintiff in error.

Alfred B. Knight, Tulsa, for defendant in error.

JACKSON, Justice.

Plaintiff, Thomas A. Goodridge, brought this action against defendant, Floyd Luther Davis, to recover damages for personal injuries sustained by plaintiff, when his motor scooter and defendant's automobile col-

lided at an intersection. The jury returned a general verdict in favor of defendant. Plaintiff appeals.

Plaintiff contends that the trial court erred in submitting the issue of contributory negligence to the jury because there was no evidence tending to show that any act or omission on the part of plaintiff could have had a causal connection with the accident.

The accident occurred at the intersection of South Lewis Street and East 21st Street in Tulsa. Prior to the accident, plaintiff was riding the motor scooter and proceeding south on Lewis. Defendant was driving the automobile in a northerly direction on Lewis. Both vehicles entered the intersection on a green light. Defendant then made a left turn across plaintiff's lane of traffic and the vehicles collided six feet east of the west curbline of Lewis.

Plaintiff testified that as he approached the intersection he noticed a large truck to his left. The truck was also headed south, and was stopped in the lane next to the center line waiting to make a left turn. This truck blocked plaintiff and defendant's view of each other.

Plaintiff testified that prior to reaching the intersection he had been driving "about 20 or 25", and that as he entered the intersection he applied the brake slightly and slowed down to "say between 15 and 20 miles per hour."

Other witnesses testified that at the time of the accident the speed of the motor scooter was 15 to 35 miles per hour.

Plaintiff testified that he crossed this intersection three or four times a week, and was aware of the fact that "a lot of traffic goes up and down twenty-first street, or makes a left hand turn on twenty-first street."

Despite the constitutional mandate that the question of contributory negligence shall always be a question for the jury we held in Miller v. Price, 168 Okl. 452, 33 P. 2d 624, that it was error to submit such question to the jury if there is no evidence which tends to show contributory negli-

gence. But in Warren v. Layman, Okl., 267 P.2d 590, we held that if there is any evidence from which contributory negligence may be inferred or presumed the issue must be submitted to the jury. In determining whether such issue should be submitted to the jury, the same test is applied as would be applied in determining whether the evidence is sufficient to submit the question of primary negligence and proximate cause to the jury. If then there is any evidence from which contributory negligence may be inferred or presumed, the court did not err in submitting this question to the jury.

Of the various acts of negligence charged to plaintiff, we deem it necessary to consider only the charge of excessive speed.

Plaintiff contends that evidence of excessive speed alone is insufficient as a matter of law to constitute proof of a causal connection as related to contributory negligence. In this connection it is argued that the evidence conclusively shows that the accident occurred less than one second after plaintiff observed or could have discovered the danger, and at that time plaintiff could not have avoided the accident at any speed in excess of 10 miles per hour.

The basic error in plaintiff's argument is the assumption that the jury could not have been justified in finding that he was negligent in failing to reduce his speed below 10 miles per hour. Plaintiff attempts to justify such assumption by the rule of law that every driver has the right to presume that all other drivers will obey the law. Plaintiff contends that because of this rule he was not required to anticipate that defendant would violate the city ordinances by making a left turn and failing to yield the right of way to plaintiff who was proceeding straight ahead, and so close as to constitute an immediate hazard; therefore plaintiff was not required to reduce his speed below 10 miles per hour in anticipation of such illegal turn.

The fact that a driver has a right to presume that other persons will obey the law does not license the one indulging such presumption to throw caution

to the wind and blindly ignore physical conditions which might occasion other drivers to make an illegal movement. The vision of both plaintiff and defendant was blocked. The defendant was entitled to make the left turn and to explore for the purpose of determining when it could be properly made. Under the circumstances the jury would have been justified in finding that plaintiff was bound to anticipate such turning movement, and was further bound to anticipate that, because of the fact the defendant's vision was obscured, the turn might be made in an improper manner.

In 59 A.L.R.2d 1202, appears an annotation on this subject. Beginning at page 1219, the author of the annotation states:

"A motorist traveling on a through street and having the right of way may assume *within reasonable limits* that one approaching from the right on a blind intersecting road or street will obey the law and give him the right of way, *but he is not relieved from using proper care under the circumstances to avoid a collision.*

\* \* \* \* \* \*

"Where a motorist is traveling on a through street and his view in either lateral direction is obstructed by a physical obstacle, he has the right to proceed, *with approaching caution,* on the assumption that automobilists approaching from the blind side will observe traffic laws and rules of the road. \* \* \*." (Emphasis supplied.)

In Smith v. Squire, 119 Vt. 59, 118 A.2d 355, 357, the court said:

"Although the plaintiff had the right of way over traffic coming from his left, as the defendant was, V.S.1947, § 10,219, subd. II, the fact that he was about to enter the intersection from the favored direction did not give him exclusive rights over a vehicle approaching from the disfavored direction. He had the right to assume in the absence of anything to the contrary, that the defendant would observe the requirements of V.S.1947, § 10,219, subd. III and approach and

enter the intersection slowly and with due care to avoid accident, but the duty was reciprocal, and he was not relieved from an equal compliance with the statute. Since the precautions to be taken increase with the hazards, the restricted view made this duty all the more imperative."

■ In the final analysis the driver of a motor vehicle must, at all times, use that degree of care which is reasonable and prudent under the circumstances. And this is true despite the so-called right to presume that other drivers will obey the law. From our consideration of the annotation above referred to, and the cases therein cited, especially Arrigo v. Luff, 1941, 57 Montg.Co. Law Rep'r 266, we have concluded that this right is merely a factor to be considered in determining what degree of care is proper under the circumstances. In Stegall v. Davis, Okl., 280 P.2d 706, 707, we said:

"But regardless of which motorist may have had the statutory right-of-way neither was relieved from a duty of exercising reasonable care and caution not to injure another at the intersection." See also Guegel v. Bailey, 199 Okl. 441, 186 P.2d 827.

■ Whether proper care is exercised is ordinarily a question for the jury. Under the circumstances of this case, including the fact that the vision of both plaintiff and defendant was obscured, the jury would have been justified in concluding that plaintiff should have reduced his speed below 10 miles per hour, if necessary to ascertain that the intersection was clear, and that his failure to do so had a causal connection with the accident.

In Shead v. Mann, 199 Okl. 275, 185 P. 2d 691, 694, it was contended, as in this case, that the driver of one car was not bound to anticipate an illegal turning movement at an intersection; therefore, such driver's excessive speed had no causal connection with the accident. While we did not mention the right to presume that others would obey the law, we expressly held

that one driver might be bound to anticipate illegal turns at intersections and to govern his speed accordingly. In the body of the opinion we said:

"The underlying principle of the doctrine invoked is that the speed of the automobile though excessive was not a proximate cause of the accident because the creation of the emergency was due solely to the bus wrongfully entering the path of the automobile when there was no duty to anticipate such entry nor opportunity on discovery thereof to avoid the accident. However applicable the rule might be, where cars approach each other on lanes of travel unbroken by intersections and the cars are confined to their respective lanes of travel, it has no application where as here the lanes of travel are broken by an intersection which is subject to the use of both. In such situation there devolves on both the duty to anticipate the exercise of the respective rights and to so govern the speed as to give proper respect thereto."

In oral argument before this court, plaintiff invited our attention to Underwood v. Fultz, Okl., 331 P.2d 375. In that case the defendant was driving between 30 and 35 miles per hour outside the city limits of Muskogee, when a small child suddenly emerged from a patch of weeds on the right side of the road. Defendant did not and could not have seen the child until the instant she struck him. We held that even if it were assumed the speed at which defendant was driving was excessive under the circumstances, such excessive speed could have had no causal connection with the accident. There is a fundamental difference between that case and the instant case. If a speed of 30 to 35 miles per hour was excessive in the Underwood case, it was only because defendant had in the past seen children playing on the left side of the road where certain houses were located. She had never seen and had no reason to assume that a child would be in the weed patch on the right side of the

road. Therefore, if her speed was excessive, the excess was not great enough to have materially affected her ability to avoid the accident. She could not have been required to reduce her speed to 5 or 10 miles per hour merely because she had in the past seen children playing on the left side of the road. And she would have to have been driving at least that slow in order to avoid striking the child after she first saw it or could have seen it. In the instant case the jury would have been justified in finding that under the circumstances plaintiff should have reduced the speed of his vehicle to a virtual standstill, and that his failure to do so had a causal connection with the accident.

Affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, JOHNSON, BLACKBIRD, IRWIN and BERRY, JJ.