James W. ADKINS, Jr., Plaintiff in Error,

v.

Ruben C. COBURN, Defendant in Error.

Larry ADKINS, a Minor, by his father and next friend, James W. Adkins, Jr., Plaintiff in Error,

v.

Ruben C. COBURN, Defendant in Error.

No. 39049.

Supreme Court of Oklahoma.

May 2, 1961.

Rehearing Denied June 27, 1961.

Green & Swidensky, Oklahoma City, for plaintiffs in error.

C. D. Cund, Harold T. Garvin, and Fredric H. Wright, Jr., Duncan, for defendant in error.

BLACKBIRD, Vice Chief Justice.

This appeal involves two consolidated actions in which both a minor, Larry Adkins, and his father, James W. Adkins, Jr., sought damages, as plaintiffs, against defendant in error, hereinafter referred to as defendant, on account of personal injuries the minor suffered when his motor cycle collided with a pickup truck driven by said defendant, at the intersection of Duncan, Oklahoma's, Seventh Street and Maple Avenue. At the time of the collision, Larry, who was then fifteen years old, and will hereinafter be referred to as if he had always been the only plaintiff, was driving the motor cycle north on Seventh Street, a "through" street, extending north and south across Maple Avenue, an east-west street, on which defendant's truck was headed west. At the intersection, there was a stop sign for traffic proceeding west on Maple Avenue to observe before entering said intersection, and, according to defendant's testimony, he observed it by stopping his truck. After the truck proceeded west past the stop sign to a point where its front wheels were beyond the center of the intersection, the motor cycle struck it, lodging its front wheel in between the back of the truck's left front wheel and its left front fender, and seriously injuring plaintiff.

Other undisputed facts developed at the jury-waived trial were: That the collision occurred a few minutes before 9:00 A.M.; that it had been raining and was still "sprinkling", but that plaintiff had nothing on his head, was wearing no rain coat, and had his lunch in a paper bag riding between his legs; that the hard surfaces of both Seventh Street and Maple Avenue were slick; that a brick building, part of which was occupied by Mistletoe Express Company, stood, facing Seventh Street, on the southeast corner of the intersection; that the front of this building was substantially the same distance, as the above mentioned stop sign, from the curbing forming Seventh Street's east boundary; and that there was both a tree and a telephone pole in the

parking between said building and said curbing.

The defendant testified, in substance, that he looked both north and south on Seventh Street, when he stopped his truck on Maple Avenue, at, or near, the stop sign, but he did not see plaintiff approaching said intersection from the south on Seventh Street. Plaintiff's testimony agreed with defendant's in establishing that his truck was moving very slowly as it entered the intersection from the stop sign. It was also established that the speed limit on Seventh Street was 25 miles per hour; and plaintiff testified that his motor cycle was traveling "around" that speed. Defendant's witness, Will J. Rodgers, Sr., who was standing in the front door of his house (which faces Seventh Street, south of the above mentioned Mistletoe Express building) as plaintiff rode past there immediately before the collision, when queried concerning the motor cycle's speed when he saw it testified, by deposition, that it was "around thirty to thirty-five miles an hour." Another excerpt from Rodgers' deposition is as follows:

"Q. Do you know the direction the rain was coming from? A. Well, I think it must have been coming out of the north or northeast from the way the boy (plaintiff) was huddled over his handle bars.

"Q. Was he stooped over his motor cycle so that he would have to raise up to see what was in front of him? A. Yes, sir."

Part of Rodgers' cross examination was as follows:

"Q. Is it your statement that the boy was not looking at the road ahead? A. No, I didn't say that.

\*      \*      \*      \*      \*      \*

"Q. Then, so far as you know he was watching his line of traffic? A. I presume from the way he was looking, going."

In rendering judgment for defendant, which judgment was evidenced by a journal entry containing no such findings or conclusions, the trial judge stated from the Bench, in material part, as follows:

"\* \* \* I am convinced after hearing all of the testimony \* \* \* that the facts \* \* \* are about like this: That the Defendant Coburn was guilty of negligence in not looking as carefully as he should have. I am sure that he stopped at the stop sign as he testified.

\*      \*      \*      \*      \*      \*

"He should have seen this young man (plaintiff), but there is a mutual and reciprocal duty on the part of both motorists as they approached the point where the accident occurred and it is the duty of both of them to keep a lookout; and *I think this young man* probably dodging the sprinkle of rain there or the spray or something *was failing to keep the lookout that he should have kept* too. There is the duty of both sides—as I say, there is probably less likelihood that an ordinary person using ordinary care would see the small motor cycle and small boy than there would have been to see the larger pickup; and I am of the opinion further that this fine young man was going a little too fast under the circumstances then existing with the slick top on the wet pavement and \* \* \* that the act*s* of negligence on the part of the plaintiff contributed to the causing of this accident and there is a causal connection between the negligent act*s* of plaintiff and the accident in question. \* \* \*

\*      \*      \*      \*      \*      \*

"\* \* \* and that must be my judgment \* \* \* that because of contributory negligence on the part of the plaintiff, that he is precluded \* \* \*." (Emphasis ours.)

From said judgment, plaintiff has perfected the present appeal, challenging, under three specifications of error, the sufficiency of the evidence to support it.

It is conceded, as "legally unassailable", that plaintiff's motor cycle was going too

fast immediately before the collision, but, by a rather adroit argument, plaintiff's counsel attempt to demonstrate that its speed was not the proximate cause of the collision; that said speed, of itself, would not have resulted in the collision, had defendant not driven his truck into the intersection without seeing the motor cycle, which latter conduct counsel characterizes as "an intervening cause which insulated plaintiff's original negligence, if any, so as to relieve him from liability."

Without going into the detail, or rationale, of plaintiff's argument, we think it sufficient to say that its most obvious defect is that it is based upon an assumption that the only respect in which plaintiff was negligent had to do with his vehicle's excessive speed. From reading the trial judge's above quoted remarks, it is obvious that this is not the only respect in which he believed plaintiff was negligent. He also mentioned plaintiff's failure "to keep the lookout he should have kept, * * *". Consistent with plaintiff's counsel's said omission, they also ignore a "favored" driver's duty to exercise care even though he is on the thoroughfare, or "through" street. The tenor of their argument is that such a driver, or motorist, has a right to rely on the discharge of the duty of a motorist approaching such a street from a "side" or "unfavored" street, to accord him the right of way and not to enter the intersection at a time when this would be hazardous, or the favored motorist has not yet passed through the intersection. As demonstrated both in Sinclair Oil & Gas Co. v. Armour, 172 Okl. 442, 45 P.2d 754, and by the cases quoted in Lee v. Pesterfield, 77 Okl. 317, 188 P. 674, 675, 676, such "favored" driver's right of way does not relieve him from the duty of exercising reasonable care and caution not to injure others at the intersection; and whether or not he has discharged this duty, like the question of whether the "unfavored" driver entering the intersection has discharged his duty of using due care under the circumstances (see Hansen v. Cunningham, Okl., 258 P.2d 906, quoting Wilkinson v.

Marcellus, 51 Cal.App.2d 630, 125 P.2d 584, 586) is a question for determination by the trier of facts, which, in this jury-waived case, was the trial judge. As speed was not the only issue upon which his negligence, or lack of it, depended, or on which the trial court obviously predicated the judgment, plaintiff's arguments fall short of demonstrating that his negligence was not the proximate cause of the collision, or that the judgment was without competent evidence reasonably tending to support it. Accordingly, they must be rejected; and the judgment is hereby affirmed.