CAROLINA CASUALTY COMPANY and GERHARD LAHME, Plaintiffs and Appellees, *v.* ARNALDO GUZMÁN BELAVAL, Defendant, Counterclaimant and Appellant.

No. 529.  Decided March 29, 1963.

*Vicente Géigel Polanco* and *Vicente Géigel Lanuza* for appellant. *F. Fernández Cuyar* for Carolina Casualty Company. *Rafael Martínez Alvarez, Jr.,* and *Alex González* for Gerhard Lahme.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The facts are very simple.  Defendant was driving his automobile along Santa Cecilia Street of Ocean Park in a southern direction.  He stopped and looked in both directions before crossing Cacique Street.  He saw a vehicle approaching along Cacique Street in a western direction and

figured that he could cross. He started to cross and before he finished doing it, the vehicle which was proceeding along Cacique Street crashed into the left rear side hurling it against the southern sidewalk of the street, causing it to run into the fence of the corner house. Both vehicles remained facing east.

The company insurer of the vehicle which was proceeding along Cacique Street indemnified its owner. Together with the latter it sued the driver of the vehicle which was crossing the street. Defendant counterclaimed. The complaint was sustained and the counterclaim dismissed. At the request of defendant-counterclaimant, we agreed to review the judgment disallowing indemnity.

■ Both drivers were equally negligent. Defendant was negligent because, although he stopped before crossing the street with the right of way and saw an approaching vehicle, he started to cross instead of waiting for the other vehicle to pass. Section 17 (g) of Act No. 279 of 1946, 9 L.P.R.A. § 187; *Gross* v. *Johnson*, 117 N.W.2d 534 (Neb. 1962). Plaintiff, because he was driving his vehicle, as he himself admitted, at 30 miles in a thickly populated urban zone and without exercising due care—observing the vehicle which could cross the thoroughfare along which he was driving and reducing the speed at the intersection. Section 15 of Act No. 279 of 1946, 9 L.P.R.A. § 185. He admitted that he did not see the vehicle crossing until the very moment of the collision so that he did not apply the brakes. We considered a similar situation of facts in *Flores* v. *F. & J. M. Carrera, Inc.*, 83 P.R.R. 320 (1961), and held that both drivers were equally responsible for the accident.[1]

■ *Conner* v. *McGrew*, 177 N.E.2d 417 (Ill. 1961), states the rule, which is most reasonable, prevailing in situations of fact such as the present, as follows:

---

[1] Although this accident occurred while Act No. 279 of 1946—9 L.P.R.A. § 171 *et seq.*—was in force, the same standards of care prevail under Act No. 141 of 1960—9 L.P.R.A. § 301 *et seq.* (Supp. 1962).

"The rule prescribing the standard of care required of a driver who is proceeding along a preferential highway has been set forth many times. The authorities agree that a driver on a preferential highway does not have an absolute or unqualified right of way that can be asserted regardless of circumstances, distances or speed. Such a driver may not plunge blindly ahead in reliance upon an assumption that the other motorist will obey the law and yield the right of way, nor may he heedlessly proceed into obvious danger. Rather, there is a duty upon such driver to observe due care in approaching and crossing the intersection and to drive as a prudent person would to avoid a collision when the danger is discovered or, by the exercise of reasonable care, should have been discovered."

See, also, *Adkins* v. *Coburn*, 362 P.2d 1099 (Okla. 1961); *Bennett* v. *Hall*, 290 P.2d 241 (Colo. 1955); *Clingman* v. *Millerville Mud Sales, Inc.*, 146 So.2d 240 (La. 1962); *Emmco Ins. Co.* v. *Ferrara*, 127 So.2d 48 (La. 1961).

■ The trial court awarded to plaintiffs $1,800 indemnity. We must now determine the amount of the damages sustained by defendant. The final diagnoses, as they appear from the certificate issued by Dr. Guzmán López, are the following:

"A. Cranioencephalic traumatism with
   I—Lineal fracture of the skull along the medial line in the frontoparietal-occipital region.
   II—Subgalial hematoma in vertex.
"B. Closed complete fracture of the left clavicle in the medial union with the external third.
"C. Compression fracture of the 7th and 11th vertebras.
"D. Small lineal fracture of the anterosuperior border of the body of the fifth thoracic vertebra.
"Treatment:
"A. Of conservative type from the neurological point of view.
"B. From the orthopedic point of view he was applied a figure-of-8 bandage to immobilize the clavicle fracture.

"The patient improved slowly and progressively having been discharged from the hospital on October 31, 1959 with instructions to be evaluated periodically by us. The patient has been

examined in our office on the following dates: November 13, 1959, December 3, 1959, and February 4, 1960.

"The neurological examination is within the normal limits, with the exception of some residual anosmia (absence of the sense of smell). The mental faculties are clear.

"We are of the opinion that the patient has recovered from his injuries and we hope that there will be no future complications, even though we must say that there is a possibility that there may be some in any cranial traumatism in the course of one year after the traumatism, after which the possibilities are minimum."

After leaving the hospital on October 31, defendant was confined in his home until January 4, 1960, when he resumed work in the Department of Public Works. These damages call for an indemnity of $15,000.

In his findings of fact the trial judge concluded that:

"...defendant and counterclaimant, in addition to the fractures, contusions, physical suffering and mental anguish resulting from the accident,[2] incurred the following expenses:

| | | |
|---|---|---|
| 1—Payment to Presbyterian Hospital....... | $822.00 |
| 2—Services rendered by orthopedist Dr. Karl Horn ................................. | 245.00 |
| 3—Services rendered by neurosurgeon Dr. M. Guzmán López........................ | 200.00 |
| 4—Compensation for absence from work from October 14, 1959 to January 4, 1960...... | 1,484.93 |
| 5—Loss of Pontiac automobile which was appraised at $1,600 and sold for $300.... | 1,300.00 |
| Total ................. | $4,051.93" |

Defendant is entitled in all to be indemnified by plantiffs-counterdefendants in the sum of $19,051.93. Since both drivers were equally responsible, plaintiff's compensation should be reduced to the sum of $900, eliminating the award

---

[2] Even in those cases in which the action is dismissed, it is advisable for the trial courts to evaluate the damages sustained in order to help this Court in disposing of cases such as the present in which the determination that there is no liability is set aside.

of attorney's fees, and that of defendants to the sum of $9,525.96. Plaintiffs shall therefore pay to defendant the sum of $8,625.96.

The judgment appealed from will be modified accordingly.