**Juanedith BATT, Plaintiff in Error,**

v.

**CITY OF TULSA, a municipal corporation, and Nick G. Wilburn, an individual, Defendants in Error.**

**No. 42183.**

Supreme Court of Oklahoma.

May 26, 1970.

Baker & Baker, Tulsa, for plaintiff in error.

Covington, Gibbon & Poe, Richard D. Gibbon, John S. Morgan, Tulsa, for defendants in error.

WILLIAMS, Justice:

This is an appeal from a judgment entered by the trial court on a jury verdict for defendant in an action brought by plaintiff to recover damages allegedly incurred as a result of an automobile accident. On appeal, reference will be made to the parties as they appeared in the trial court.

The sole issue presented herein is whether the trial court erred in instructing the jury as to contributory negligence.

At the time here in question, plaintiff was traveling south at a speed of 25–30 miles per hour in the inside lane of Cincinnati Avenue in Tulsa. Just prior to its intersection with Haskell Street, Cincinnati, southbound, curves to the left and rises slightly in grade. As she approached this intersection, plaintiff noticed a garbage truck coming toward Cincinnati Avenue from the west on Haskell. This truck was owned by defendant City of Tulsa and driven by defendant Wilburn.

Upon entering the intersection, plaintiff's automobile collided with the garbage truck, allegedly resulting in personal injuries to plaintiff and damages to her automobile. The evidence established that a stop sign was located on Haskell to halt traffic on that street before it proceeded onto or across Cincinnati. Defendant Wilburn admitted that he was charged with failing to obey this stop sign and that he plead guilty to such charge.

At trial, plaintiff gave the following testimony.

"Q.: Mrs. Batt, when was the first time you saw the truck before you hit it?

"A.: Well, you are driving sort of upgrade there, and I saw that truck, I don't know, I can't judge distance, but I saw it coming down through there, but I didn't have no idea it wasn't going to stop.

"Q.: From the time you saw the truck, did you have time to stop your car?

"A.: Well, I could have stopped my car if I had had any idea he was going to pull out there into me, but you come down to an intersection, you don't stop and wait to see if he is going to come on, you know. I always go on if you got the right-of-way."

\*   \*   \*   \*   \*   \*

"Q.: Did you watch it all the way through that time as it came out into the intersection and collided with you?

"A.: No, I didn't, I was sititng there driving down the road watching my own business. I was driving.

"Q.: Did you ever glance in that direction?

"A.: Well, I saw the truck, but I didn't know he was pulling out in my path until he hit me.

"Q.: But you are telling us that at the time you did see him he was back of the stop sign and going in an easterly direction on Haskell, is that correct?

"A.: Coming east, yes.

"Q.: It was back of the stop sign?

"A.: Well, it was rolling to the stop sign."

\*   \*   \*   \*   \*   \*

"Q.: Which lane of travel were you in when the accident occurred?

"A.: The inside lane."

\*   \*   \*   \*   \*   \*

"A.: By that you mean as far as you know you were still driving your car without changing your course or applying your brakes when the wreck happened?

"A.: As far as I remember, I don't know whether I put the brakes on or not.

"Q.: \* \* \*, could you tell whether it was slow, or how was it driving?

"A.: The truck?

"Q.: Yes?

"A.: It couldn't have been moving very fast."

The co-defendant Wilburn, driver of the truck, testified as follows:

"A.: I say I pulled up there and stopped at the stop sign \* \* \* and a couple of cars passed."

\*   \*   \*   \*   \*   \*

"Q.: All right, then what did you do after those two cars went by you?

"A.: I pulled out into the street, started across the street."

\*   \*   \*   \*   \*   \*

"Q.: What did you do when you saw the car approaching you?

"A.: I stopped again.

"Q.: Was your car, or was your truck traveling forward or what was the intention of the movement of your truck when it was hit?

"A.: It was still standing still \* \* \* standing still."

At the conclusion of the evidence, the trial court gave to the jury an instruction, among others, concerning contributory negligence. As noted above, the jury returned a verdict for defendant. From the judgment entered on this verdict and from an order overruling her motion for new trial, plaintiff appeals.

Plaintiff contends herein that the trial court erred in giving an instruction on contributory negligence as no evidence of such was introduced and as plaintiff was entitled to assume that the driver of the truck would obey the stop sign on Haskell and yield the right-of-way to her. We disagree. The evidence adduced at the trial indicates that plaintiff failed to observe defendant Wilburn's truck stop at the stop sign; failed to observe the defendant pulling into the intersection at a slow rate of speed; failed to observe defendant crossing one lane of travel into the lane plaintiff was in; and failed to observe defendant stopping before the collision. Plaintiff offered no explanation for her failure to observe these actions except by a cavalier statement to the effect that she was driving down the road watching her own business. The evidence further indicates that plain-

tiff at no time applied her brakes or slowed down the speed of her car, or diverted her course to avoid the accident. From this evidence the jury properly could have concluded that plaintiff failed to exercise ordinary care in responding to an impending and observable danger ahead, and that the lack of attention and proper lookout aided and contributed to the causing of the accident. Failure to observe the actions of the defendant's truck may be considered in determining whether plaintiff exercised that degree of care which an ordinarily prudent person under like or similar circumstances would have used, and is for the jury to determine. Lacen v. Miller, Okl., 316 P.2d 167; Goodridge v. Davis, Okl., 345 P.2d 894, 897; Foster v. Boyd, Okl., 381 P.2d 853. The jury was authorized to find that plaintiff's merely observing defendant's truck before it came to the stop sign would not excuse her failure to maintain a proper lookout thereafter.

In Bocock v. Tulsa Stockyards Co., Okl., 309 P.2d 279, we held, in the first paragraph of the syllabus:

"If there is any evidence of contributory negligence, or evidence from which contributory negligence may be inferred or presumed, it is the duty of the court under our constitutional provision to submit the issue to the jury."

In Goodridge v. Davis, supra, this Court stated:

"In the final analysis the driver of a motor vehicle must, at all times, use that degree of care which is reasonable and prudent under the circumstances. And this is true despite the so-called right to presume that other drivers will obey the law. * * * In Stegall v. Davis, Okl., 280 P.2d 706, 707, we said:

"But regardless of which motorist may have had the statutory right-of-way neither was relieved from a duty of exercising reasonable care and caution not to injure another at the intersection."

Plaintiff contends that this Court in Guegel v. Bailey, 199 Okl. 441, 186 P.2d 827, 829, has held that " ' * * * the driver on the boulevard has a right to assume that the driver on the intersecting highway will obey the stop sign and yield him the right-of-way.' " However, in the cited decision the issue of contributory negligence was not involved. Rather, the Court was concerned with the issue of whether the trial court had instructed the jury correctly as to the statutory right-of-way rule applicable to the facts involved therein. For these reasons, it is our view that such decision is distinguishable from the action herein.

In our opinion, evidence was submitted below from which contributory negligence could be inferred and the trial court properly gave an instruction on such and submitted the issue to the jury.

The judgment of the trial court is affirmed.

All the Justices concur.