**TOWNLEY'S DAIRY, a partnership composed of Leon Townley, R. C. Townley and the Estate of Samuel E. Townley, Deceased, Represented by Booksie Jane Townley, Leon E. Townley and Robert E. Townley, Joint Executors, Plaintiffs in Error,**

v.

**Jewell F. CREECH, Wife, and as Administratrix of the Estate of Jesse Eugene Creech, Deceased, Defendant in Error.**

No. 42188.

Supreme Court of Oklahoma.

May 26, 1970.

Rehearing Denied Nov. 10, 1970.

Marian P. Opala, Sam A. Townley, Townley & Freeman, Oklahoma City, for plaintiffs in error.

Garrett & Pool, Del City, for defendant in error.

BLACKBIRD, Justice.

In the trial court, defendant in error, hereinafter referred to as "plaintiff", obtained judgment, in accord with the jury's verdict, for damages against plaintiffs in error, hereinafter referred to as "defendants", for the wrongful death of her husband, Jesse Eugene Creech, which resulted from a collision, at a street intersection, with one of the defendant Dairy's delivery trucks, driven by said Dairy's route salesman, Glenn Dale Nail, and the Chevrolet Sedan that the said Mr. Creech (hereinafter referred to as the "Deceased") was driving.

The point at which the collision occurred about 6:30 o'clock and before daylight, on

a misty and foggy February morning, is where Midwest City's Douglas Boulevard (hereinafter referred to merely as "Douglas"), extending in a northerly and southerly direction, intersects, at right angles, Southeast 29th Street, which extends in an easterly and westerly direction. At the intersection, both streets were 55 feet, and at least 4 traffic lanes, wide between their curb lines; and traffic on Southeast 29th Street, a thoroughfare, or "favored" highway, was "protected" by upright "Stop" signs standing between Douglas' two northbound traffic lanes and its two south-bound traffic lanes, at their juncture with Southeast 29th Street (hereinafter referred to merely as "29th Street", or "29th").

The collision occurred when the dairy truck, traveling east on 29th, en route from the Dairy's headquarters in southeastern Oklahoma City to McCloud, Shawnee, Tecumseh and Seminole, struck the Creech auto "broadside" as the latter vehicle was proceeding south across 29th, after its progress south on Douglas had been interrupted by stopping at the aforementioned stop sign, parallel with 29th Street's north curb line. After the collision, the Creech Chevrolet came to rest upright in the parkway of the automobile service station in the southeastern corner of the intersection. The truck came to rest, facing in a southwesterly direction, partially up over the curb in the station's parkway and partially out into one of Douglas' traffic lanes, after turning over on its left side.

At the trial, it was shown that, just as the Creech car had entered the intersection after stopping at the stop sign on Douglas, another auto came from the north on Douglas' outside, or western, south-bound lane, and passed the Creech car, on its right, or west, side, and crossing 29th, going south, only an instant before the subject collision. The dairy truck narrowly missed striking this car. It was also shown that another auto, occupied by an Air Force Sergeant and a Chaplain, that had approached said stop sign, from the north, behind, and in the same traffic lane as, the Creech car, was still standing at said sign

when the collision occurred. Although the occupants of this third car did not testify, a William Riley Hill, driver of a fourth car that was standing, facing west, on 29th Street's southernmost west-bound lane, preparatory to entering the intersection for a turn south onto Douglas, witnessed the collision, and testified on behalf of plaintiff. This eyewitness stated that the Creech car had passed through approximately the north half of the intersection, before he first saw the dairy truck, coming into it from the west.

Mr. Wilder, the Oklahoma City Police Officer who arrived at the scene of the collision approximately 15 minutes after it occurred, and then made an investigation of it before either of the motor vehicles involved had been moved, testified, on behalf of plaintiff, that, from the debris, and the tire marks left on the pavement beginning at the point at which the dairy truck had apparently started pushing the Creech car sideways (in a southeasterly direction toward the curb line of the service station's driveway), he was able to determine the collision's point of impact, and that this was 11 feet east of Douglas' west curb line and 43 feet south of 29th Street's north curb line. He further testified that it was 69 feet from this point to the service station's curb line and that, from there, it was 30 more feet, past the 16 or 18-inch-high-curb, to the place where the Creech car finally came to rest, after hurdling the curb; and that the dairy truck traveled a total distance of 54 feet from the point of impact, before it came to rest on its side.

No witness for the plaintiff was asked to, nor gave, any estimate of the speed of either of the two vehicles at the time they collided, but the aforementioned Mr. Hill testified that, because of the dense fog, if an auto had been traveling as much as 20 miles per hour, it would probably have collided with another one, before its driver could have seen the latter.

There was other testimony indicating that the intersection was rendered even more hazardous for the movement of traffic,

in and around it, by the construction work in progress there. According to Officer Wilder, this project consisted of narrowing the center median to provide for construction of a third lane for left-turn traffic, and the installation of electric traffic signal lights. According to plaintiff's witness, Sultuska, not only was the middle of the street "torn up", but there were excavations along both sides of it for the construction of new curbings there.

At the close of the plaintiff's evidence, defendants demurred to it on the ground, among others, that it failed to show the speed of the dairy truck, or to support the allegations, in plaintiff's petition, of its excessive speed. When this demurrer had been overruled, and defendants had been allowed exceptions to said ruling, they called the dairy truck driver, Nail, and two other witnesses to testify on their behalf; but neither of these witnesses was interrogated concerning the speed of the truck.

Nail did testify, in part, as follows:

" * * *

Q Would you tell us, Mr. Nail, about the weather conditions immediately surrounding the intersection of Southeast 29th Street and Douglas Boulevard?

A It was lightly foggy and light misty rain.

* * * * * *

Q Do you remember the point on Southeast 29th Street as you approached where you could first see the intersection that we are concerned with?

A Yes, sir.

Q How far away from the intersection were you?

A About a city block.

Q And what did you see?

A I seen a car making a left hand signal pointing to turn south; I seen a car coming from the north setting and waiting yielding to me.

* * * * * *

Q And then what happened?

A As I approached the intersection then I saw this Mr Creech's car coming across in front of me.

Q How far away from the intersection were you when you first saw that?

A About a car length from him.

* * * * * *

Q Was he in the intersection?

A Yes, sir.

* * * * * *

Q Did you attempt to stop?

A Yes, sir, I did.

Q And were you able to?

A No, sir.

* * * * * *

Q Were you looking at the intersection?

A Yes, sir.

Q How do you explain your failure to see the vehicle at that point?

A Well as I approached the intersection I was looking toward the oncoming turning car and the one that was setting over there and that's the only vehicles that I seen.

Q Now as we already know, the front of your truck struck the Creech vehicle in approximately the center of his right hand side, is that right?

A Yes.

* * * * * *

CROSS EXAMINATION

* * * * * *

Q I would like for you to tell us once more if you will, why you did not see Mr. Creech's car until you were that close to it?

A Simply because I don't know where it come from."

After the parties had introduced all of their evidence and rested, defendants orally moved for a directed verdict in the following words:

"Come now the defendants and move the Court to direct a verdict in favor of said defendants on the ground that all

of the evidence taken in a light most favorable to plaintiff fails to show any negligence on the part of defendants' driver, and in fact shows that the accident in question was proximately caused by the negligence of plaintiff's decedent."

After the court overruled this motion, the case was submitted to the jury under instructions, which included the following:

### "No. 4

You are instructed that the rights, duties and obligations of the drivers of the vehicles involved in the collision complained of were mutual and reciprocal. It was the duty of each of said drivers as they approached the point where the collision occurred to exercise ordinary care in the management of his vehicle.

It was the duty of each to drive his vehicle at a reasonable rate of speed and under reasonable and proper control.

It was likewise the duty of each driver *to use reasonable and ordinary care in keeping a lookout ahead, consistent with the safety of other vehicles and persons who might be using and traveling upon said street or highway.*

\*     \*     \*     \*     \*     \*

### No. 6

Under the applicable statutes and ordinances it is provided that:

'Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop, and after having stopped shall yield the right of way to any vehicle which *has entered* the intersection from another highway *or* which *is approaching so closely on said highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection shall yield the right of way to the vehicle so proceeding.'*" (All emphasis added)

After the jury had deliberated, and returned its verdict for plaintiff, defendants moved for judgment notwithstanding said verdict, but this motion was overruled and defendants were allowed an exception to said ruling. After the overruling of their motion for a new trial, defendants perfected the present appeal.

For reversal, defendants argue that the trial court erred in overruling their motions for a directed verdict and for judgment notwithstanding the verdict. The substance of their argument, briefly stated, is that, since the evidence fails to show the speed of the dairy truck, or its distance, if any, from the intersection at the time the Deceased's Chevrolet entered it, it also fails to show that the truck's driver violated the assured-clear-distance-ahead rule (47 O.S.1961, § 11–801) or that the Deceased's vehicle entered said intersection before said truck, or at a time when the truck was not so close to it as to constitute an "immediate hazard", which was necessary to give the Deceased's car the right of way over the truck and to show that the truck driver was negligent in not yielding to the Deceased and allowing his car to pass on through the intersection, without striking it. Defendants' position is that, since such important facts were not proved, there was nothing to show that the truck (being on favored 29th Street with stop signs on Douglas to protect it) did not have the right of way over the Deceased's auto—rather than the auto having the right of way over the truck, on the basis of having entered the intersection before it.

■ We think defendants' argument is too narrow and restrictive to apply to the evidence as a whole—as it must, to demonstrate error in the trial court's overruling their motions for a directed verdict and for judgment notwithstanding the verdict. This is for the reason that the evidence as to which of the vehicles' drivers was negligent in causing the collision was not confined to the question of which had the right of way as they approached each other, but also included the question of which driver, if either, used, or failed to use, reasonable and ordinary care "in keeping a lookout ahead, consistent with the

safety of other vehicles and persons who might be using and traveling upon said street or highway, * * * " (as the jury was told in the court's hereinbefore quoted Instruction No. 4). As held in Adkins v. Coburn, Okl., 362 P.2d 1099:

"1. The right of way accorded a driver of a motor vehicle on a 'through' street, or thoroughfare, over drivers of such vehicles on streets intersecting it, does not relieve him from duty of exercising reasonable care and caution not to injure them. *This duty* encompasses more than driving at a lawful speed, and *includes keeping a proper lookout to avoid striking vehicles crossing the thoroughfare at intersections."* (Emphasis added)

Defendants' argument in this appeal is of substantially the same tenor as that of the plaintiff in the jury-waived, quoted case. There, we ended our discussion of it as follows:

" * * *

As demonstrated both in Sinclair Oil & Gas Co. v. Armour, 172 Okl. 442, 45 P.2d 754, and by the cases quoted in Lee v. Pesterfield, 77 Okl. 317, 188 P. 674, 675, 676, such 'favored' driver's right of way does not relieve him from the duty of exercising reasonable care and caution not to injure others at the intersection; and whether or not he has discharged this duty, like the question of whether the 'unfavored' driver entering the intersection has discharged his duty of using due care under the circumstances (see Hansen v. Cunningham, Okl., 258 P.2d 906, quoting Wilkinson v. Marcellus, 51 Cal.App.2d 630, 125 P.2d 584, 586) *is a question for determination by the trier of facts,* which, in this jury-waived case, was the trial judge. As *speed was not the only issue upon which his negligence or lack of it, depended,* or on which the trial court obviously predicated the judgment, plaintiff's arguments fall short of demonstrating that his negligence was not the proximate cause of the collision, or that the judgment was without competent

evidence reasonably tending to support it." (Emphasis added)

The same principles applied in the above quoted case were also applied by this Court in the more recent case of Goodridge v. Davis, Okl., 345 P.2d 894, in which we quoted Smith v. Squire, 119 Vt. 59, 118 A.2d 355, 357, and in West v. Independent School Dist. No. 2, McClain County, Okl., 412 P.2d 185, in which we held:

"Neither party to a collision in intersection is relieved from duty of exercising reasonable care and caution not to injure another, irrespective of which has statutory right-of-way."

In addition to other authorities cited in the above quoted opinion, see the recent case of Foster v. Boyd, Okl., 381 P.2d 853 (1st syll.), and 8 Am.Jur.2d, "Automobiles and Highway Traffic", § 748. Because of the hazardous driving conditions which the evidence tended to show existed at the subject intersection, on account of both the weather and the construction work in progress there, the jury was warranted in concluding that each of the drivers involved should have used extra precautions to look out for other motor vehicles within the range of possible collision with their own. As to the consideration given fog, slick streets and roadways, and physical obstacles in similar cases, notice Wolff v. Coast Engine Products, Inc., 72 Wash.2d 226, 432 P.2d 562, 564, and other cases cited in the annotations at 59 A.L.R.2d 1202, 1206, ff., and 42 A.L.R.2d 13, and the footnotes to 8 Am. Jur.2d, supra, § 731, 735–737.

After having carefully examined the record, we cannot say that there was no competent evidence reasonably tending to show that if the dairy truck driver, Nail, had been using such precautions, he could, and would, have seen the Deceased's automobile in time to have avoided the collision with it, that he was negligent in not doing so, and that his negligence was the proximate cause of the collision. We therefore hold that the trial court committed *no error* in overruling defendants' motions for a directed verdict and for judgment notwith-

standing the verdict. The judgment herein appealed from is therefore affirmed.

BERRY, V. C. J., and DAVISON, WILLIAMS, JACKSON and McINERNEY, JJ., concur.

HODGES and LAVENDER, JJ., dissent.